UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KELLINA M.,[1]

          Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

Case No. 3:22-cv-01997-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Kellina M. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying plaintiff's application for Supplemental Security

Income ("SSI") disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C.

§§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant

to 42 U.S.C. § 405(g). For the reasons set forth below, that decision is reversed and remanded for

the further proceedings.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
plaintiff's last name.

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence

that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a

specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir.

2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not

substitute its judgment for that of the Commissioner when the evidence can reasonably support

either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

Instead, where the evidence is susceptible to more than one rational interpretation, the

Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from

the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see

also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to

determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920;

*Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180

F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since

her alleged onset date of January 10, 2018. Tr. 32. At step two, the ALJ determined plaintiff

suffered from the following severe impairments: "history of substance abuse, cervical and

lumbar degenerative disc disease, and schizoaffective disorder." *Id.* At step three, the ALJ found

plaintiff did not have an impairment or combination of impairments that met or medically

equaled a listed impairment. *Id.*

The ALJ next assessed plaintiff's residual functional capacity ("RFC") if plaintiff

stopped her substance abuse and determined plaintiff has the capacity to perform medium work

as defined in 20 C.F.R. § 416.967(c), except:

> [She] would need to avoid climbing ropes, ladders, or scaffolds, as
> well as unprotected heights, moving machinery and similar
> hazards; and the claimant would also be limited to simple
> repetitive, routine tasks with no more than occasional contact with
> supervisors, co-workers, and the general public.

Tr. 39.

At step four, although the ALJ wrote that "claimant can perform past relevant work," Tr.

50, it is clear from the record and the remainder of the ALJ's opinion that plaintiff has no past

relevant work experience and that the ALJ's statement was a typographical error. At step five,

the ALJ concluded that, considering plaintiff's age, education, work experience, RFC, and

assuming she stopped her substance abuse, there were jobs that existed in significant numbers in

the national economy that plaintiff could perform, including janitor, hand packager, and auto

detailer. Tr. 51. Thus, the ALJ concluded plaintiff was not disabled. *Id.*

## DISCUSSION

### I.    Interpersonal Limitations

Plaintiff argues the ALJ failed to incorporate into the RFC the full extent of her

interpersonal limitations as assessed by the state agency psychological consultants. The state

agency psychological consultants reviewed plaintiff's records and opined she was moderately

limited in her ability to interact appropriately with the public, accept instructions and respond

appropriately to criticism from supervisors, and get along with coworkers or peers without

3 – OPINION AND ORDER

distracting them or exhibiting behavioral extremes. Tr. 128, 146. They further opined that

plaintiff was able to work with the public and coworkers and accept criticism and redirection

from supervisors on a "cursory basis." Tr. 128, 146. The ALJ found these opinions to be

"generally persuasive," Tr. 49, and in fashioning the RFC, the ALJ limited plaintiff to "no more

than occasional contact with supervisors, co-workers, and the general public." Tr. 39. Plaintiff

argues that by failing to capture that she was limited to "cursory" interactions and supervision,

the ALJ improperly inflated her social functioning abilities, resulting in harmful error.

While the Administration does not define "cursory," Social Security Ruling 83-10 defines

"occasionally" as "occurring from very little up to one-third of the time." *Titles II & XVI:*

*Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10

(S.S.A. 1983), at *5. Courts have recognized that the term "occasionally" refers to the quantity of

an interaction, while the term "superficial," which is similar to "cursory," refers to the quality of

the interaction. *See Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00746, 2023 WL 4991918,

at *13 (S.D. Ohio Aug. 4, 2023)[2]; *Greene v. Saul*, No. 3:19-CV-00687-JD, 2020 WL 4593331, at

*4 (N.D. Ind. Aug. 11, 2020) ("Logically, 'occasional' goes to the frequency of interaction" and

"'superficial' aptly describes the quality of interaction."); *Wartak v. Colvin*, 2016 WL 880945, at

---

[2] There, the court referred to an order of remand from the Appeals Council to the ALJ
incorporating language from the parties' stipulated agreement:

> "[S]uperficial interaction" is a term "that is readily defined, understood and
> applicable to a work setting, as it speaks to the depth, kind and quality of social
> interactions, and indicates that the claimant could not have sustained more than
> shallow or cursory interactions with others, i.e., coworkers, the general public,
> and/or supervisors. This term is distinguishable and distinct from "occasional"
> which describes the frequency of interaction with others and how much
> interaction the claimant could tolerate on a sustained basis.

*Stephen D.*, 2023 WL 4991918 at *13. The court made clear that the "a single Appeals Council
order in an unrelated case is not binding on the Commissioner and has no precedential value
beyond the case in which it was entered." *Id.*

4 – OPINION AND ORDER

\*7 (N.D. Ind. March 8, 2016) ("'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interaction.").

Courts have also held that an ALJ's failure to recognize the distinction between "occasional" interactions and "superficial" interactions in fashioning the RFC is error. *See, e.g.*, *Connie P. v. Comm'r Soc. Sec. Admin.*, No. 3:22-CV-00799-MK, 2023 WL 3116749, at \*5 (D. Or. Apr. 27, 2023) (finding where "the ALJ credited the opinions of the state agency physicians that Plaintiff was limited to superficial interactions, she was required to incorporate these limitations into Plaintiff's RFC," and "[t]he ALJ's failure to include Plaintiff's moderate limitations on social interactions into the RFC by limiting her to 'occasional' social interactions with the public was error"); *Jackson v. Kijakazi*, No. CIV-20-321-SPS, 2022 WL 565584, at \*4 (E.D. Okla. Feb. 24, 2022) (finding error where the ALJ assessed the persuasiveness of medical sources by crafting an RFC that appeared to equate "occasional" with "superficial" without explanation or clarification); *Greene*, 2020 WL 4593331, at \*4 (finding reversible error because medical providers limited claimant to "superficial, causal interactions with others" and RFC limited claimant to "occasional interactions"); *Eveland v. Berryhill*, No. 2:16-CV-203-PRC, 2017 WL 3600387, at \*4 (N.D. Ind. Aug. 22, 2017) (finding the ALJ erred by limiting the plaintiff to "occasional" contact with co-workers and supervisors when medical providers opined the plaintiff could engage only in "superficial" contact); *Sanders v. Astrue*, No. CIV. 11-1356 JNE/JJG, 2012 WL 1657922, at \*12 (D. Minn. Apr. 17, 2012), *report and recommendation adopted as modified,* No. CIV. 11-1356 JNE/JJG, 2012 WL 1658988 (D. Minn. May 11, 2012) (distinguishing "occasional" interaction and "superficial" interaction because even a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions).

Similarly, here, the ALJ erred in fashioning an RFC that limited plaintiff to "occasional" contact with co-workers and supervisors when the state agency psychological consultants, whom the ALJ found were "generally persuasive," opined that plaintiff could engage only in "cursory" contact. "This error raises questions as to the claimant's RFC and is not harmless because it brings into question the step five findings." *Jackson*, 2022 WL 565584, at *4.

## II.    Instructions

The state agency psychological consultants opined that plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions, and maintain attention and concentration for extended periods. Tr. 128, 146. However, they found she was not significantly limited in the ability to understand, remember, and carry out very short and simple instructions and make simple work-related decisions. *Id.* They further found plaintiff's mental health symptoms prevented her from persisting at detailed tasks, but she was able to maintain concentration required of simple tasks. *Id.* The ALJ observed that plaintiff had the ability "to understand and remember instructions and procedures for simple tasks," Tr. 49, and in the RFC, limited plaintiff to simple, repetitive, routine tasks. Tr. 34.

Plaintiff contends the ALJ erred by only addressing her ability to perform tasks and ignoring her documented deficiencies regarding instructions.  Plaintiff contends this omission is significant because the jobs that the ALJ found plaintiff could perform require reasoning level 2, which "contradict[s her] inability to understand and process 'detailed instructions.'"  Pl. Br. 10.

But plaintiff omits an important portion of the definition of level 2 reasoning. The Dictionary of Occupational Titles ("DOT") contains a scale of six General Educational Development ("GED") levels. DOT, App. C, *available at* 1991 WL 688702. Level 2 is defined as: "Apply common sense understanding to carry out *detailed but uninvolved* written or oral

instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.* (emphasis added).

Thus, courts have held that the ability to perform simple, routine, and repetitive tasks is equivalent to level two reasoning. *See Coleman v. Astrue*, No. CV 10-5641 JC, 2011 WL 781930, at *5 (C.D. Cal. Feb. 28, 2011) ("The Court recognizes, as defendant points out, that the weight of prevailing authority precludes a finding of any inconsistency between a reasoning level of two and a mere limitation to simple, repetitive tasks or unskilled work.")[3]; *see also Ranstrom v. Colvin*, 622 F. App'x 687, 688 (9th Cir. 2015) ("There is no appreciable difference between the ability to make simple decisions based on 'short, simple instructions' and the ability to use commonsense understanding to carry out "detailed *but uninvolved* . . . instructions,' which is what Reasoning Level 2 requires."); *Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008)

---

[3] Citing *Salazar v. Astrue,* 2008 WL 4370056, *7 (C.D. Cal. Sept.23, 2008) (numerous courts have rejected argument that limitation to simple, repetitive tasks is inconsistent with level two reasoning ability); *Tudino v. Barnhart,* 2008 WL 4161443, * 10 (S.D. Cal. Sept.5, 2008) (capacity to perform simple repetitive tasks consistent with unskilled work; level two reasoning appears to be breaking point for those individuals limited to performing only simple repetitive tasks); *Charles v. Astrue,* 2008 WL 4003651, *4–*5 (W.D. La. Aug.7, 2008) (because of level two's use of term "uninvolved" in conjunction with "detailed," level two consistent with a residual functional capacity to perform simple, routine, repetitive work tasks); *Isaac v. Astrue,* 2008 WL 2875879, *3–*4 (E.D. Cal. July 24, 2008) (limitation to simple job instructions consistent with level 2 reasoning); *Squier v. Astrue,* 2008 WL 2537129, *5 (C.D. Cal. June 24, 2008) (limitation to simple, repetitive tasks not inconsistent with ability to perform jobs with reasoning level of two; observing that while level two uses term "detailed instructions," "it specifically caveats that the instructions would be uninvolved—that is, not a high level of reasoning); *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning consistent with residual functional capacity to perform simple and routine work); *Meissl v. Barnhart,* 403 F. Supp. 2d 981, 983 (C.D. Cal.2005) (plaintiff's ability to perform simple tasks that had some element of repetitiveness to them indicated reasoning level of two; while level 2 references ability to follow detailed instructions, it qualifies and downplays the rigorousness of those instructions by labeling them as uninvolved); *Flaherty v. Halter,* 182 F. Supp. 2d 824, 850 (D. Minn. 2001) ("the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation" to "simple, routine, repetitive, concrete, tangible tasks").

(holding "there was no conflict between the ALJ's step five determination that Abrew could complete only simple tasks and the vocational expert's testimony that Abrew could do jobs that the U.S. Department of Labor categorizes at "Reasoning Level 2"). There is no error here.

## III    Medium Work

Finally, plaintiff argues that the ALJ erred in finding she is capable of medium work without properly supporting this determination. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(b). Plaintiff argues the ALJ erred in finding she could lift and carry up to 50 pounds when, in fact, her cervical impairments prevent her from doing so.

Although plaintiff is correct that there is evidence of degenerative disc disease on various CT scans in her medical record, there is otherwise no information—expert or otherwise—about plaintiff's ability to left or carry weight. Based on the medical record, the agency doctors concluded that plaintiff had no exertional limitations. Tr. 143, 144 ("A non-exertional RFC is reasonable."). Based on these opinions and the information in the medical record, it was reasonable for the ALJ to find plaintiff capable of medium work, and this court is not at liberty to reverse an ALJ's rational reading of the evidence.

## IV.    Remedy

When a court determines the Commissioner erred in denying benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or the immediate payment of benefits, the Ninth Circuit employs the following "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally

sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. If all three requisites are met, the court may remand for benefits. *Id.* However, even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id.* at 1021.

Here, the first requisite is met because the ALJ failed to correctly analyze plaintiff's social limitations in assessing the RFC. With respect to the second requirement, the record appears to be fully developed; however, it is the ALJ's responsibility to resolve conflicts and ambiguities, such as the one presented by the error in this case. Therefore, this case is reversed and remanded for further proceedings consistent with this decision.

## ORDER

The Commissioner's decision is REVERSED and REMANDED for further proceedings.

DATED September 26, 2023.

                                        /s/ Youlee Yim You
                                        Youlee Yim You
                                        United States Magistrate Judge